# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CLAUDE VIGIL,

      Plaintiff,

      vs.                                             Civ. No. 17-413 KK

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed June 22, 2017, in support of Plaintiff Claude Vigil's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits. On September 21, 2017, Plaintiff filed his Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing With Supporting Memorandum ("Motion"). (Doc. 18.) The Commissioner filed a Response in opposition on November 2, 2017 (Doc. 20), and Plaintiff filed a Reply on December 2, 2017. (Doc. 21.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 8, 9.)

## I. Background and Procedural Record

Claimant Claude V. Vigil ("Mr. Vigil") alleges that he became disabled on June 12, 2013, at the age of forty-one because of injured left leg from gunshot wound, stab wound on right buttocks, dog bite wound on left knee, depression, and posttraumatic stress disorder. (Tr. 169, 173.[3]) Mr. Vigil completed the tenth grade in 1986, and worked as a ditch cleaning laborer, a county government maintenance worker, and wood seller. (Tr. 174.) Mr. Vigil reported he stopped working on June 12, 2013, due to his medical conditions. (Tr. 173.)

On November 27, 2013, Mr. Vigil filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 157-62.) Mr. Vigil's application was initially denied on March 5, 2014. (Tr. 68-79, 80, 101-05.) It was denied again at reconsideration on August 9, 2014. (Tr. 81-93, 94, 106-10.) On September 10, 2014, Mr. Vigil requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 112.) The ALJ conducted a hearing on January 8, 2016. (Tr. 38-67.) Mr. Vigil appeared in person at the hearing with non-attorney representative Roy Archuleta.[4] (*Id.*) The ALJ took testimony from Mr. Vigil (Tr. 41-56), Mr. Vigil's father (Tr. 56-63), and an impartial vocational expert ("VE"), Leonard Francois (Tr. 63-65). On February 3, 2016, ALJ Lawrence T. Ragona issued an unfavorable decision. (Tr. 19-33.) On March 9, 2017, the Appeals Council issued its decision denying Mr. Vigil's request for review and upholding the ALJ's final decision. (Tr. 1-6.) On April 5, 2017, Mr. Vigil timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on June 22, 2017.

[4] Mr. Vigil is represented in this proceeding by Attorney Francesca J. MacDowell. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

(5)     residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     <u>**Standard of Review**</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Vigil was not disabled at step five of the sequential evaluation. (Tr. 31-32.) Specifically, the ALJ determined that Mr. Vigil had not engaged in substantial gainful activity since October 1, 2013. (Tr. 24.) He found that Mr. Vigil had severe impairments of residual effects of status-post gunshot wound to the left lower extremity, posttraumatic stress disorder ("PTSD"), and affective disorder. (*Id.*) The ALJ also found that Mr. Vigil had nonsevere impairments of hypertension, unspecified insomnia, and unspecified neuralgia, neuritis, and radiculitis. (*Id.*) The ALJ, however, determined that Mr. Vigil's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. (Tr. 25-28.) As a result, the ALJ proceeded to step four and found that Mr. Vigil had the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except that he can

5

stand/walk/sit for 6 out of 8 hours, and lift/carry 25 pounds frequently, and 50 pounds occasionally. He is further limited to no complex work with a work environment with no more than occasional interaction with others, working with things rather than people.

(Tr. 28.) The ALJ further concluded at step four that Mr. Vigil was unable to perform any past relevant work. (Tr. 31.) The ALJ determined at step five that based on Mr. Vigil's age, education, work experience, RFC, and the testimony of the VE, there were jobs that exist in significant numbers in the national economy that Mr. Vigil could perform. (Tr. 31-32.)

In support of his Motion, Mr. Vigil argues that (1) the ALJ's step three findings that Mr. Vigil's impairments do not meet Listing of Impairments 12.04 and 12.06 are incomplete and contrary to the evidence, and that the ALJ failed to consider Listing 12.05.C; (2) the ALJ failed to apply correct legal standards in weighing the medical opinion evidence; (3) the ALJ's RFC finding failed to include all of Mr. Vigil's functional limitations; and (4) the ALJ's RFC error tainted the VE testimony at step five, which rendered the ALJ's conclusion that Mr. Vigil can work contrary to law. (Doc. 18 at 12-25.)

For the reasons discussed below, the Court finds this case requires remand.

A. **Step Three Determination**

The ALJ determined, at step two, that Mr. Vigil had severe medically determinable mental impairments of PTSD, anxiety disorder and affective disorder. (Tr. 24.) The ALJ then, based on his evaluation of the evidence, rated Mr. Vigil's degree of functional limitation and determined Mr. Vigil's mental impairments would cause no more than mild restrictions in his activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence and pace. (Tr. 27-28.) Relying on his two step findings, the ALJ, at step three, then determined that Mr. Vigil did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25-28.) Mr. Vigil argues that the ALJ's findings that Mr. Vigil's impairments did not meet Listing of Impairments 12.04 – *Affective Disorders*[6] and 12.06 – *Anxiety Related Disorders*[7] are incomplete and contrary to the evidence, and that the

---

[6] The mental health Listing of Impairments was modified, effective January 17, 2017. Mr. Vigil argues that the Listings as they existed at the time of the decision apply here. (*See* Doc. 18 at 12, fn. 8.) At the time of the ALJ's decision, Listing 12.04 provided that *Affective Disorders* is characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.     Medically documented persistence, either continuous or intermittent, of one of the following:

      1.     Depressive syndrome characterized by at least four of the following:

            a.     Anhedonia or pervasive loss of interest in almost all activities; or
            b.     Appetite disturbance with change in weight; or
            c.     Sleep disturbance; or
            d.     Psychomotor agitation or retardation; or
            e.     Decreased energy; or
            f.     Feelings of guilt or worthlessness; or
            g.     Difficulty concentrating or thinking; or
            h.     Thoughts of suicide; or
            i.     Hallucinations, delusions, or paranoid thinking; or

. . .

B.     Resulting in at least two of the following:

      1.     Marked restriction of activities of daily living; or
      2.     Marked difficulties in maintaining social functioning; or
      3.     Marked difficulties in maintaining concentration, persistence, or pace; or
      4.     Repeated episodes of decompensation, each of extended duration.

. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[7] At the time of the ALJ's decision, Listing 12.06 provided that *Anxiety Related Disorders* is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A.     Medically documented findings of at least one of the following:

      1.     Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

            a.     Motor tension; or
            b.     Autonomic hyperactivity; or
            c.     Apprehensive expectation; or
            d.     Vigilance and scanning; or

ALJ also failed to consider Listing 12.05.C – *Intellectual Disability*.[8] In particular, Mr. Vigil argues that the ALJ's rejection of Robert Krueger, Ph.D.'s assessment was cursory, and that the ALJ overlooked certain evidence that supported Dr. Krueger's assessment and contradicted his step two ratings of Mr. Vigil's functional limitations that then informed his step three determination. (Doc. 18 at 12-17.) Mr. Vigil further argues there is evidence that he meets the criteria for intellectual disability; *i.e.,* the record demonstrates an IQ score below 70, he has other

---

       2.       A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

       3.       Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

       4.       Recurrent obsessions or compulsions which are a source of marked distress; or

       5.       Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

       AND

B.       Resulting in at least two of the following:

       1.       Marked restriction of activities of daily living; or
       2.       Marked difficulties in maintaining social functioning; or
       3.       Marked difficulties in maintaining concentration, persistence, or pace; or
       4.       Repeated episodes of decompensation, each of extended duration.
. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[8] At the time of the ALJ's decision, Listing 12.05 provided as follows:

*Intellectual disability* refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

       . . .

       C.       A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2014).

severe impairments, and there is some evidence that his intellectual deficits manifested before age 22. (*Id.* at 16.)

The Commissioner contends that the ALJ reasonably concluded at step three that Mr. Vigil's impairments did not meet either Listing 12.04 or 12.06 because the ALJ reasonably discounted Dr. Krueger's opinion and found that Mr. Vigil's limitations were not severe enough under the Paragraph B criteria of those listings. (Doc. 20 at 8-11.) As for Listing 12.05.C, the Commissioner contends that despite having an IQ score at the uppermost end of the requisite range for Listing 12.05.C, Mr. Vigil did not satisfy the listing's capsule definition which requires significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22. (*Id.* at 12-14.) The Commissioner further contends that no doctor of record said that Mr. Vigil met Listing 12.05.C, and that neither Mr. Vigil or his counsel claimed disability on this basis during the administrative proceedings. (*Id.*) As such, the Commissioner contends that the ALJ was under no obligation to explain why Mr. Vigil did not have intellectual deficits more severe than borderline intellectual functioning. (*Id.*)

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). The ALJ's step three finding should discuss the evidence and explain why the ALJ found that the claimant was not disabled at that step. *Id.* "[A]n ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10 (citation omitted).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[9] An ALJ need not articulate every factor; however, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183 at *5 (emphasis added); *see Keyes-Zachary v Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii))).

### 1. **Robert Krueger, Ph.D's Assessment**

The ALJ's discussion of the medical record evidence related to Mr. Vigil's mental impairments at step three included (1) Robert Krueger, Ph.D.'s December 18, 2015, psychological evaluation (Tr. 329-34)[10]; (2) John Lang, Ph.D.'s September 1, 2015, medical

---

[9] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(c)(2)-(6) (evaluating opinion evidence for claims filed before March 27, 2017).

[10] Dr. Krueger reviewed Mr. Vigil's medical records, conducted a clinical interview with biopsychosocial history and mental status examination, and administered the reading portion from Wide Range Achievement Test - Revised and administered the Wechsler Adult Intelligence Scale-IV. (Tr. 329.) Dr. Krueger made Axis I diagnoses of PTSD, chronic; major depressive disorder, single episode, moderate to severe; and pain disorder, associated with a general medical condition and psychological factors. (Tr. 333.) He made an Axis II diagnosis of borderline intellectual functioning. (*Id.*) Dr. Krueger assessed a GAF score of 45 (indicating serious symptoms). (*Id.*) Dr. Krueger assessed that

> [t]he results of the current evaluation indicate that Mr. Vigil has multiple impairments and he does have significant functional impairment. He can be expected to understand, remember, and follow simple work instructions with moderate impairment and complex or details instructions with

source statement (Tr. 338)[11]; (3) State agency examining psychological consultant Michael Gzaskow, M.D.'s February 19, 2014, assessment (Tr. 280-84)[12]; (4) State agency nonexamining

---

> marked impairment. Mr. Vigil can be expected to have *marked impairment* with maintaining pace and persistence, and it is doubtful that he could persist with the work task for more than two hours now, in his current condition, he can be expected to have *marked impairment* with adjusting to changes in work environments. Because of serious problems with anxiety, PTSD, and major depression he can be expected to have *marked impairment* in many relationships with coworkers, supervisors, and the general public. Mr. Vigil said he generally avoids being around groups of people, and he also reported having ongoing issues with anger management and said he has gotten into several fights. Mr. Vigil can be expected to have marked impairment with traveling to distant places alone. Because of his high level of anxiety and PTSD he is reluctant to go out in public alone and he also currently does not have a driver's license. Mr. Vigil can be expected to have at least moderate and at times *marked impairment* with being aware of and reacting appropriately to dangers in work environments. His impairments are of long-term duration and can be expected to persist for more than one year. At the present time, Mr. Vigil is marginally capable of managing his own financial benefits.

(Tr. 333-34.) (Emphasis added.) The ALJ accorded little weight to Dr. Krueger's assessment "because there [was] no medical evidence to corroborate such limitations." (Tr. 26.)

[11] John Lang, Ph.D., began treating Mr. Vigil on November 20, 2014, for depression, anxiety, PTSD, and paranoia. (Tr. 321-26, 327-28.) On September 1, 2015, Dr. Lang's treatment notes indicated that Mr. Vigil "has been seen for regular psychotherapy for paranoia, hypervigilance, anxiety and depression. He would benefit from medical marijuana. He is not sleeping and losing weight. Also recommend antidepressant medication." (Tr. 338.)

[12] State agency examining psychological consultant Michael Gzaskow, M.D., evaluated Mr. Vigil on February 19 2014. (Tr. 280-84.) Dr. Gzaskow took various histories and performed a mental status exam. (Tr. 280-83.) Dr. Gzaskow determined as follows:

> A.  DIAGNOSTIC IMPRESSIONS:
>
> Axis I: a. PTSD secondary to "break-in trauma" with gunshot wounds; . . .
>        b. Alcohol abuse/in full, sustained remission.
> . . .
>
> B.
>
> 1. Claimant can relate to others, but this is often compromised by his PTSD issues with chronic anxiety/depression.
> 2. He can understand and follow directions in a structured/supportive environment, but indicates cannot do so in a productive fashion due to his physical limitations.
> 3. The claimant can attend to simple tasks.
>
> C. The claimant has the ability to manage any and all benefits (if granted).
>
> The claimant completed the PHQ-9 form with a score of 12/27 and a self-rating of somewhat difficult in terms of potential problems at work, taking care of things at home, or getting along with other people.
>
> His CES-D scale/NIMH is a 30/60 in terms of depressive severity.

psychological consultant Jill Blacharsh, M.D.'s March 2, 2014, assessment (Tr. 73-74, 75-77)[13]; and (5) State agency nonexamining psychological consultant Thomas VanHoose, Ph.D.'s August 8, 2014, assessment (Tr. 87-88, 89-91)[14]. (Tr. 26-27.) The ALJ also discussed Mr. Vigil's Function Report and his administrative hearing testimony. (Tr. 25, 27-28.) The ALJ accorded Dr. Gzaskow's and Dr. Krueger's assessments little weight in rating Mr. Vigil's degree of functional limitations, and instead relied on the State agency nonexamining psychological consultant PRT ratings to determine that Mr. Vigil had only mild limitations in activities of daily living and moderate limitations in concentration persistence and pace.[15] Based on that finding, the ALJ determined that Mr. Vigil did not meet the Paragraph B criteria under either Listing 12.04 or 12.06. (Tr. 28.)

The ALJ's evaluation of Dr. Krueger's medical opinion is insufficient. In evaluating and weighing Dr. Krueger's assessment, the ALJ accorded it little weight and broadly explained,

---

(Tr. 283.) The ALJ accorded Dr. Gzaskow's little weight explaining that the limitations he assessed were not supported by the medical record. (Tr. 26-27.)

[13] State agency nonexamining psychological consultant Jill Blacharsh, M.D., reviewed Mr. Vigil's records on March 2, 2014, and made PRT ratings that Mr. Vigil had mild limitations in his activities of daily living, mild limitations in his social functioning, and moderate limitations in concentration, persistence and pace. (Tr. 73-74.) She assessed mental functional limitations that Mr. Vigil could understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. (Tr. 77.) The ALJ accorded little weight to Dr. Blacharsh's PRT rating regarding Mr. Vigil's social functioning explaining that he was giving Mr. Vigil every consideration. (Tr. 27.) The ALJ accorded great weight to Dr. Blacharsh's PRT ratings related to Mr. Vigil's activities of daily living and concentration, persistence, and pace. (*Id.*) The ALJ did not weigh Dr. Blacharsh's functional assessment of Mr. Vigil's ability to do work related mental activities.

[14] State agency nonexamining psychological consultant Thomas VanHoose, Ph.D., reviewed Mr. Vigil's medical records on August 8, 2014, at reconsideration. (Tr. 87-88, 89-91.) He affirmed Dr. Blacharsh's PRT ratings and MRFCA findings from March 2, 2014. (*Id.*) The ALJ's evaluation of Dr. VanHoose's PRT ratings mirrored his evaluation of Dr. Blacharsh's PRT ratings. (Tr. 27.) The ALJ did not weigh Dr. VanHoose's functional assessment of Mr. Vigil's ability to do work related mental activities.

[15] Contrary to the State agency nonexamining psychological consultant PRT rating that Mr. Vigil had mild limitations in social functioning, the ALJ found Mr. Vigil had moderate limitations in social functioning. (Tr. 28.)

without more, that there was no evidence to corroborate the limitations Dr. Krueger assessed.[16] (Tr. 26.) In doing so, however, the ALJ failed to be sufficiently specific regarding his reasons for the weight he accorded, particularly in light of the medical record evidence, so that it is clear to the Court. For instance, Dr. Krueger made observations during the mental status exam and administered objective testing on which he based certain of his findings. The ALJ did not discuss or account for Dr. Krueger's observations or his findings that were based on objective testing.[17] This is error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (explaining that a psychological opinion may rest either on observed signs and symptoms or on psychologist tests and constitute specific medical findings); *see also Beard v. Colvin*, 642 F. App'x 850, 852 (10th Cir. 2016) (unpublished) (an ALJ can discount findings to the extent they relied on subjective complaints found to be incredible, but must give reasons for rejecting objective assessment); *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (finding the ALJ was free to reject a treating psychologist's opinion where it appeared to be based on subjective complaints and isolated instances "rather than objective findings"); 20 C.F.R. § 416.927(c)(3) (explaining that the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion). The ALJ failed to discuss consistencies in the medical evidence record that supported Dr. Krueger's assessment. For example, State agency examining psychological consultant Dr. Gzaskow diagnosed Mr. Vigil with PTSD issues with chronic anxiety and depression, and assessed that his ability to relate to others was often compromised by

---

[16] The ALJ discussed certain findings Dr. Krueger made with respect to Mr. Vigil's physical limitations that he rejected – that Mr. Vigil had difficulty climbing steps and falls down. (Tr. 26.) The ALJ also discussed why he gave little weight to Dr. Krueger's GAF score. (*Id.*) The ALJ did not provide any additional explanation for according little weight to Dr. Krueger's assessed limitations related to Mr. Vigil's ability to do work related mental activities.

[17] *See* fn. 10, *supra*.

those impairments.[18] (Tr. 283.) Further, Mr. Vigil's treating psychologist, Dr. Lang, referred Mr. Vigil for medical marijuana based on persistent paranoia, hypervigilance, anxiety and depression.[19] (Tr. 338.) This is probative evidence that the ALJ discounted and failed to demonstrate proper consideration of in evaluating Dr. Krueger's assessment. *See Clifton*, 79 F.3d at 1009 (the ALJ must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects); *see also* 20 C.F.R. § 416.927(c)(4) (explaining that the more consistent a medical opinion is with the record as a whole, the more weight we will give the opinion). The ALJ failed to demonstrate that he considered Dr. Krueger's examining relationship with Mr. Vigil. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all); *see also* 20 C.F.R. § 416.927(c)(1) (explaining that generally more weight is given to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you). Finally, the ALJ failed to show that he considered that Dr. Krueger's opinion was more recent in comparison to the State agency nonexamining psychological opinion evidence. Their PRT ratings were made twenty-one and eighteen months, respectively, prior to Dr. Krueger's findings. Given that Dr. Krueger's examination was more recent and that neither Dr. Blacharsh nor Dr. VanHoose examined Mr. Vigil, the limitations Dr. Krueger assessed are significant. *See Jaramillo v. Colvin*, 576 F.

---

[18] *See* fn. 12, *supra*.

[19] Dr. Lang began treating Mr. Vigil on November 20, 2014 (Tr. 327-28), and was still treating him at the time of the administrative hearing held on January 8, 2016 (Tr. 46). Although the ALJ found Mr. Vigil's statements regarding the intensity, persistence, and limiting effects of his symptoms not entirely credible (Tr. 30-31), Mr. Vigil testified that he is paranoid and worried all the time of another intrusion or being hurt; that he rarely leaves his house; that he keeps his front gate locked at all times; that he has welded his back door shut to prevent a break-in; that he sleeps with a gun; and that he has multiple assault rifles and hundreds of rounds of ammunition due to his paranoia. (Tr. 45-54.)

App'x 870, 874 (10th Cir. 2014) (unpublished) (noting the significance of a recent physician's examination which found more limitations than a nonexamining physician's assessment made two years prior).

For the foregoing reasons, the ALJ's evaluation of Dr. Krueger's assessment is insufficient.

### 2. **Listings 12.04 and 12.06**

Mr. Vigil argues that the ALJ failed to demonstrate that he considered the Paragraph A criteria under either Listing 12.04 or Listing 12.06, and that Dr. Krueger's assessment, if properly evaluated and adopted, would support that he meets the Paragraph B criteria under both listings. (Doc. 18 at 13-15.) The Commissioner concedes that the ALJ did not address the Paragraph A criteria in his determination, but asserts that the decision allows for the assumption that Mr. Vigil met the Paragraph A criteria. (Doc. 20 at 8, fn. 6.) The Court agrees. As for the Paragraph B criteria, the Court has determined that the ALJ's evaluation of Dr. Krueger's assessment was insufficient. The Court therefore agrees that Dr. Krueger's assessment, if properly evaluated and adopted, could support that Mr. Vigil has marked limitations in at least two areas of functioning as required under the Paragraph B criteria of Listings 12.04 and 12.06.[20]

### 2. **Listing 12.05.C**

The ALJ did not make any reference to or identify that he considered Listing 12.05.C at step three. The ALJ's failure to do so, in this case, was error because the record contains some evidence that Mr. Vigil could satisfy the requirements of Listing 12.05.C. For example, on December 18, 2015, Dr. Krueger administered the Wechsler Adult Intelligence Scale-IV on Mr. Vigil which demonstrated a Full Scale IQ score of 70. (Tr. 332.) An IQ of 70 or below

---

[20] *See* fns. 6, 7 and 10, *supra*.

15

meets one of the three criteria under this listing.[21] The ALJ also determined that Mr. Vigil has physical or other mental impairments that impose additional work-related limitation of function; *i.e.,* residual effects of status-post gunshot wound to the left lower extremity, PTSD, anxiety disorder, and affective disorder. (Tr. 24.) This determination, therefore, meets the second criteria under this listing.[22] Finally, there is some evidence that Mr. Vigil's intellectual deficit began prior to age 22; *i.e.,* he had to repeat the sixth grade, and failed to complete high school or community college trade classes.[23] (Tr. 43-44, 174, 330.) The ALJ failed to determine whether the record supported this conclusion. This is error. 20 C.F.R. § 416.920(a)(4)(iii) (explaining that at step three the ALJ must determine whether a claimant's impairment's meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement).

Here, the record presented objective evidence suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "The ALJ has a duty to ensure that an

---

[21] *See* fn. 8, *supra*.

[22] *Id.*

[23] The regulations instruct that in the absence of record evidence before age 22, the ALJ should consider evidence about a claimant's current intellectual and adaptive functioning and the history of the intellectual disorder that supports the conclusion that the disorder began before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(H)4.a. through h. (*Establishing that the disorder began before age 22*). Examples of evidence that can demonstrate or support this inclusions include:

    a.    Tests of intelligence or adaptive functioning;
    b.    School records indicating a history of special education services based on your intellectual functioning;
    c.    An Individualized Education Program (IEP), including your transition plan;
    d.    Reports of your academic performance and functioning at school;
    e.    Medical treatment records;
    f.    Interviews or reports from employers;
    g.    Statements from a supervisor in a group home or a sheltered workshop; and
    h.    Statements from people who have known you and can tell us about your functioning in the past and currently.

*Id.*

adequate record is developed during the disability hearing consistent with the issues raised," even in a counseled case. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). Although Mr. Vigil did not have attorney representation during the disability hearing, his non-attorney representative presented record evidence of Mr. Vigil's borderline intellectual functioning and underscored Mr. Vigil's diagnosis in his closing remarks at the administrative hearing. (Tr. 41, 66.) State agency examining psychological consultant Dr. Gzaskow also assessed that Mr. Vigil's general intellectual functioning was "low average." (Tr. 283.) Despite this evidence, the ALJ failed to make any inquiry or develop the record as necessary to ensure an adequate record as to this issue. This is error.

For all of the foregoing reasons, the step three findings are not supported by substantial evidence.

### 3. The ALJ's Other Findings Do Not Conclusively Preclude Claimant's Qualification Under the Listings at Step Three

The Court must consider whether "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). If such findings "conclusively preclude Claimant's qualification under the listings at step three" such that "no reasonable factfinder could conclude otherwise," then any step three error is harmless. *Id.* at 735. If, however, there are no findings that "conclusively negate the possibility" that a claimant can meet a relevant listing, the Court must remand to the ALJ for further findings. *Id.*

The ALJ's step three errors are not harmless. In order to establish harmless error, there must be objective findings in the ALJ's sequential step analysis that affirmatively establish that

Mr. Vigil would not meet the listing requirements. Here, there are no such findings.[24] Moreover, Dr. Krueger's assessment provides sufficient evidence to create a question as to whether Mr. Vigil's mental impairments meet the Paragraph B criteria for Listings 12.04 and 12.06. Additionally, the medical record contains some evidence that Mr. Vigil could satisfy the requirements of Listing 12.05.C. The ALJ's other findings, therefore, do not affirmatively establish that Mr. Vigil cannot meet the requirements of Listings 12.04, 12.06 and 12.05.C, or conclusively negate the possibility of any finding that Mr. Vigil is presumptively disabled under one of those listings. *Fisher-Ross*, 431 F.3d at 734-35.

It is the ALJ's responsibility to decide the ultimate legal question whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, *3. Here, the ALJ erred at step three because he failed to provide sufficiently specific reasons for the weight he accorded Dr. Krueger's medical source opinion, failed to explain the uncontroverted evidence he chose not to rely upon, and failed to discuss significantly probative evidence when he determined that Mr. Vigil did not meet any of the listings at issue. *Clifton*, 79 F.3d at 1010. Further, because there are no findings elsewhere in the ALJ's decision that conclusively preclude Mr. Vigil's qualification under the listings at step three, such that "no reasonable factfinder could conclude otherwise," the ALJ's error is not harmless. *Fischer-Ross*, 431 F.3d at 735. Accordingly, the Court must remand to the ALJ to make the requisite findings at step three. *Clifton*, 79 F.3d at 1010.

---

[24] The ALJ's mental RFC findings incorporated functional limitations based on Mr. Vigil's mental limitations, albeit less restrictive than Dr. Krueger's assessment, and demonstrate that Mr. Vigil's mental impairments impact his ability to do work-related mental activities. Mr. Vigil has challenged the ALJ's mental RFC and argued that he failed to include all of the nonexertional limitations supported by the medical source evidence. (Tr. 18 at 18-22.) Having determined this case requires remand based on the ALJ's errors at step three, however, the Court does not address this issue. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). That said, the ALJ's mental RFC assessment at step four does not conclusively negate the possibility of any finding that Mr. Vigil is presumptively disabled under the pertinent listings. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 734-35 (10th Cir. 2005) (finding that the ALJ's step four RFC findings related to claimant's physical abilities clearly rejected any notion that the claimant was presumptively disabled).

### B. The Court Will Remand for Additional Administrative Proceedings

Mr. Vigil argues that the Commissioner's decision should be reversed for an immediate award of benefits. (Doc. 18 at 26.) District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)). This matter has not been pending for an unreasonable period of time. Additionally, the Court is not persuaded that remand for additional fact-finding would merely delay the receipt of benefits. The Court is therefore remanding for additional administrative proceedings.

### C. Remaining Issues

The Court will not address Mr. Vigil's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, Mr. Vigil's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 18) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**